FILED

2013 DEC 27  PM 12: 15

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  Nima Nami (SBN 183042)
   NAMI LAW FIRM
2  20434 S. Santa Fe Avenue
   Long Beach, CA 90810
3
   Tel: (949) 610-8535
4  Fax: (949) 612-3839
   E-mail: nima@namilaw.com
5
6  Attorneys for Plaintiff RODRIC DAVID

7

8

9                    UNITED STATE DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  RODRIC DAVID, an individual            Case No. **CV13-09500-CAS (JEMx)**

13                            Plaintiff,   **COMPLAINT FOR DAMAGES AND OTHER RELIEF:**

14       v.
                                           **(1) DEFAMATION**
15  CHARIF KAZAL, also known as CHARIF     **(2) SLANDER PER SE**
    HUSSEIN, an individual; KARL KAZAL, also  **(3) INTENTIONAL INTERFERENCE**
16  known as KHALED HUSSEIN, an individual;     **WITH ECONOMIC ADVANTAGE**
    TONY KAZAL, also known as TAREK         **(4) NEGLIGENT INTERFERENCE**
17  HUSSEIN, an individual; and                **WITH ECONOMIC ADVANTAGE**
    DOES 1 through 10, inclusive           **(5) NEGLIGENCE**
18                                          **(6) INTENTIONAL INFLICTION OF**
                            Defendants.         **EMOTIONAL DISTRESS**
19                                          **(7) VIOLATION OF RIGHT TO**
                                                **PRIVACY**
20                                          **(8) FALSE LIGHT**
                                            **(9) INJUNCTIVE RELIEF**
21
                                           **JURY TRIAL DEMANDED**
22
                                                        BY FAX
23

24       Plaintiff RODRIC DAVID ("PLAINTIFF" or "MR DAVID"), by and through his

25  attorneys, alleges as follows with respect to the above-captioned matter:

26                         **JURISDICTION AND VENUE**

27       1.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because

28  there is complete diversity of citizenship between PLAINTIFF and all Defendants as the action is

between citizens of a state and citizens of a foreign state, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

2.     This Court has personal jurisdiction over Defendants because their tortious statements and actions that are the subject of this proceeding (a) are intentionally targeted at a California resident; (b) impugn the reputation and integrity of a resident whose career is centered in California; and (c) the brunt of PLAINTIFF's harm, both in terms of emotional distress and damage to reputation and to his business, was suffered in California. Personal jurisdiction over Defendants is therefore proper in California based on the "effects" of their conduct in California.

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because defendants have engaged in the wrongful acts herein alleged within this judicial district by, among other things, intentionally targeting PLAINTIFF here, and a substantial part of PLAINTIFF's claims arose in this district.

## INTRODUCTION

4.     This case arises out of numerous false and derogatory statements about PLAINTIFF made by Defendants on their website www.kazalfamilystory.com (the "WEBSITE") in violation of California common and statutory law. In summary, Defendants knowingly published untrue statements that PLAINTIFF is a "thief" who is guilty of collusion, corporate fraud and physical abuse in an attempt to destroy PLAINTIFF's personal and professional reputation, and to interfere with his current and prospective business relations. Defendants' intentional and tortious actions were expressly aimed at California. Defendants published statements on the WEBSITE that they knew would have a potentially devastating impact upon PLAINTIFF, a California resident. They also knew that the brunt of that injury would be felt by PLAINTIFF in the State in which he lives and works.

## THE PARTIES

5.     PLAINTIFF is an individual residing in Los Angeles, California. PLAINTIFF is the chairman and chief executive officer of Thunder Studios, Inc., a film, TV and commercial production studio located in Carson, California.

6.     PLAINTIFF previously had been involved in several business ventures with defendants CHARIF KAZAL, KARL KAZAL, and TONY KAZAL, including ventures in the Cayman Islands and the United Arab Emirates ("UAE") related to a company they owned called Emerging Capital Limited, LLP, that ended in mutual acrimony and unflattering media coverage of Defendants. PLAINTIFF is informed and believes, and on that basis alleges, that Defendants published the defamatory statements in an attempt to shift the blame for their own misdeeds onto PLAINTIFF, and to injure him both personally and professionally.

7.     Defendant CHARIF KAZAL, also known as CHARIF HUSSEIN ("CHARIF"), is an individual residing in Sydney, Australia, who holds himself out as a "venture capitalist" and a leader in the Australian hospitality industry. PLAINTIFF is informed and believes, and on that basis alleges, that at all times herein mentioned, CHARIF was and is an employee of Australian World Trading Pty Ltd., a company owned by defendant KARL KAZAL. In an attempt to shield KARL KAZAL from liability relating to Emerging Capital Limited, LLP in the Cayman Islands, CHARIF committed perjury before the Cayman Island court by claiming that KARL KAZAL was not an owner of Emerging Capital Limited, LLP.

8.     Defendant KARL KAZAL, also known as KHALED HUSSEIN ("KARL"), is an individual residing in Sydney, Australia.

9.     Defendant TONY KAZAL, also known as TAREK HUSSEIN ("TONY"), is an individual residing in Sydney, Australia.

10.     CHARIF, KARL, and TONY are brothers (the "KAZAL BROTHERS"). They, along with five other brothers, purport to be an average family fallen victim to an evil press. However, the KAZAL BROTHERS' reputation is well known, and they have made public their ties to ruling families in Dubai and Abu Dhabi, and a friendship and business relationship with Saif al-Islam Gaddafi, the son of the late Libyan dictator Colonel Gaddafi, who currently is facing charges in the International Criminal Court for crimes against humanity.

11.     PLAINTIFF is informed and believes, and on that basis alleges, that at all times herein mentioned, CHARIF, KARL, and TONY, and each of them, acted as an agent of each of

the others in doing the things herein alleged, and acted within the course and scope of that agency and with the permission and consent of one another.  In postings on the WEBSITE, the KAZAL BROTHERS make clear that they each had a hand in drafting or approving the WEBSITE's content through references to each of them by name and such statements as "*Our family* will continue to openly challenge the abominable treatment *we* have received from firstly Rodric David, then Linton Besser, the Sydney Morning Herald and Fairfax Media Limited" and "*We* will not rest until *we* obtain justice." (Italics supplied)

12.     PLAINTIFF does not know the true names and capacities of Defendants named herein as DOES 1 through 10, inclusive, and, therefore, sues these Defendants by fictitious names. Each DOE defendant is responsible in some manner for the acts, omissions and damages alleged herein.  PLAINTIFF will amend this Complaint to allege their true names and capacities when known.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

13.     Beginning on or about May 24, 2013, the KAZAL BROTHERS have prominently posted false and derogatory statements about PLAINTIFF on the WEBSITE.  Having received negative press about their misdeeds by numerous journalists, including Linton Besser in the *Sydney Morning Herald* and having failed in their defamation suit against that newspaper and its publisher, the KAZAL BROTHERS developed the WEBSITE with the stated purpose to "provide the public with [their] side of the story" *i.e.*, that Rodric David is an alleged "thief" who is guilty of collusion with Linton Besser to "destroy" the Kazal Family, and has engaged in corporate fraud and physical abuse and intimidation.   Such statements include, but are not limited to, the following:

(a)     "Intro – How the Mercenary Journalist Linton Besser Aided & Abetted The Corporate Thief Rodric David"

(b)     "It is evident from the frequency and volume of his well-constructed articles that SMH [*Sydney Morning Herald*] investigative reporter Linton Besser carried out his

prolonged smear campaign with the full consent of the newspaper's editorial staff purely to assist Rodric David, the David Family and their business interests."

(c)   "With this in mind, Besser clearly worked directly for and with Rodric David to frame the distorted content of his articles defaming my family to apply inordinate pressure on us during legal proceedings we had commenced in May 2010 against Rodric in the United Arab Emirates (UAE) and then in the Grand Cayman Islands. Every article was carefully planned and then published to coincide with and influence critical legal proceedings and court appearances."

(d)   "The Corporate Thief – Rodric David" (together with unauthorized photograph of Mr. David)

(e)   "Warning!   The corporate thief Rodric David" (together with unauthorized photograph of Mr. David)

(f)   "Rodric and the David family are well connected to the Australian media, celebrities and Political elite, with John David openly advising us to drop our court cases against Rodric and he (John David) would ensure that all the adverse media and attention towards the Kazal family would cease."

(g)   "As stated earlier, Rodric David designed the media smear campaign as a way to destroy our credibility during the most crucial points of our legal representations."

(h)   "At the heart of our legal actions against Rodric David was his corporate fraud in the United Arab Emirates (UAE) as well as his breaching of fiduciary duty in his role as a director of a company in which we had a financial interest."

(i)   "Another benefitting party also colluded with Rodric David by appending the nine (9) inflammatory SMH [*Sydney Morning Herald*] articles published from 1 to 17 September 2010 to his Affidavit lodged with the Cayman Island court on 27 September 2010. This was obviously an attempt to influence the Judge's decision on the case set for him."

(j)   "Rodric David was then free to merely provide comment in his Affidavit under the heading 'Negative Publicity involving the Kazals.' If there was a swift dismissal of our Cayman Island court case this would have financially benefited Rodric David, as he was a vested party to a much more rewarding business deal of which we had no knowledge at the time."

(k)   "Working closely with Linton Besser, Rodric David timed the continuing scandalous exposés to disguise secret financial deals of significant personal benefit to him. He skillfully used the media and other proceedings such as the NSW Independent Commission Against Corruption (ICAC) to shift focus to other areas, diverting attention away from his Corporate Fraud."

(l)   "That is why my preference for a title for our heretofore unknown side of the story is 'The Corporate Thief and The Mercenary Journalist' but then, that is just my opinion of a very appropriate headline."

(m)   "Another Desperate Attempt by the Corporate Thief Rodric David."

(n)   "I have accurately reported the proceedings of our family's unfortunate association with Mr Rodric David so that other persons are aware of the way he practices business."

(o)   "Mr Rodric David's corporate fraud and Breach of Fiduciary Duties was not the only deplorable and underhanded things that Mr Rodric David did to me and my family."

(p)   "Reprehensible manoeuvrings [sic] by Mr David with a tragic by-product."

(q)   "So my advice still holds – extreme caution is required if you are contemplating any type of business arrangement with Mr Rodric David."

(r)   "Protected: Another hopeless act by the corporate thief Rodric David"

(s)   A chart labeled "Failure Types" with an arrow from the word "catastrophic" pointed at an unauthorized photo of MR. DAVID.

(t)     "If you are currently involved in a business venture with Rodric David or are contemplating doing business with him, our advice is to RUN the other way and fats!"

14.     The WEBSITE specifically states that PLAINTIFF "is now living in California, USA" and that the KAZAL BROTHERS are "warning" all persons who are currently doing or who are thinking about doing business with PLAINTIFF to "exercise extreme caution" and stay away from him.

15.     The WEBSITE is interactive in that it allows users to share postings on social media via LinkedIn, Twitter, Google+, and Pinterest; post public messages or comments in electronic bulletin boards to be read by other users; solicits e-mails from WEBSITE viewers; and allows users to sign up for RSS feeds to automatically update them when new postings are added.

16.     As of the filing of this Complaint, the above remains on the WEBSITE.

17.     None of the allegations or statements of fact are true.

18.     The KAZAL BROTHERS claim on the WEBSITE that PLAINTIFF committed "corporate fraud" in the Cayman Islands and UAE, with full knowledge that MR. DAVID has not committed any crime or ever been found liable for "corporate fraud," "theft," or any other type of conversion by courts in the Cayman Island, UAE, or anywhere else.

19.     In 2010, CHARIF filed criminal proceedings against MR. DAVID in the UAE for criminal breach of trust and illegally obtaining money from their joint company, Emergent Capital Limited and International Property Services LLC ("IPS LLC") (Abu Dhabi Criminal Court of First Instance, Criminal Case No. 12977/2010). The Abu Dhabi court appointed a forensic auditing expert, Ali Al Muhairi Auditing, to review the allegations raised by CHARIF as part of the criminal proceedings. On March 21, 2011 the expert submitted his report to the court in which he determined that the allegations raised by CHARIF against MR. DAVID were baseless and unfounded. Instead, the expert found that CHARIF's agent, Andrew Kelly, was responsible for the misrepresentation of the accounts of IPS LLC, not MR. DAVID. CHARIF challenged the findings of the court-appointed forensic auditing expert. In response to CHARIF's challenge, on

May 11, 2011, the court appointed a panel of three forensic experts (Mohammed Adu Nasser, Ali Sultan Al Muhairi, and Mohammed Adul Aziz Salim) to review the findings and accept further evidence of alleged criminal conduct. On February 22, 2012, the panel of three forensic auditing experts submitted their report and confirmed the finding of the first forensic auditor's report, *i.e.* CHARIF's allegations against MR. DAVID were baseless and unfounded, and that Andrew Kelly was responsible for any irregularity of the accounts.

20.     The Abu Dhabi court permitted the litigants to present their comments on the findings of the report at a hearing on February 22, 2012. On April 18, 2012, the court issued a judgment in favor of MR. DAVID, and declared him innocent from all charges filed against him.

21.     CHARIF appealed the court's verdict, Appeal No. 2393/2012. The appellate court rejected CHARIF'S appeal and affirmed the judgment of acquittal.

22.     The KAZAL BROTHERS knew that their statements on the WEBSITE about MR. DAVID being a "corporate thief" or that he engaged in "corporate fraud" were false due to the findings of the four forensic accounting experts, the acquittal of MR. DAVID by the Abu Dhabi court of all criminal charges, and the acquittal being upheld on appeal. Nevertheless, the KAZAL BROTHERS, and each of them, published such statements on the WEBSITE in a deliberate effort to defame MR. DAVID, destroy his reputation, and to discourage all persons from doing business with MR. DAVID, whom they specifically point out "is now living in California."

23.     Moreover, the KAZAL BROTHERS wrongfully published statements about MR. DAVID's alleged "conspiracy" with Linton Besser with full knowledge of the falsity of such claims. On the WEBSITE, the KAZAL BROTHERS state that MR. DAVID "set out to publicly destroy [CHARIF's] reputation, and the business reputation of [the Kazal] family by colluding with Linton Besser, a Sydney Morning Herald journalist who wrote consecutive defamatory articles full of untruthful accusations and innuendoes."

24.     In 2010, the KAZAL BROTHERS brought suit against the publisher of the *Sydney Morning Herald*, Fairfax Media, for those same allegedly defamatory articles in a case entitled *Karl Kazal, et al. v. Fairfax Media Publications Pty Limited, et al.*, (Supreme Court of New South

Wales, Case No. 2010/348228).   There was no evidence of any wrongdoing by MR. DAVID, Linton Besser, the *Sydney Morning Herald*, or Fairfax Media. The KAZAL BROTHERS were forced to drop the suit and walk away with nothing.

25.     The KAZAL BROTHERS also knew these statements were false because the Independent Commission Against Corruption of New South Wales, Australia ("ICAC"), whose function is to investigate and expose corrupt conduct in the New South Wales public sector, investigated the claims made by Mr. Besser and printed in the *Sydney Morning Herald* and concluded that they were true.

26.     The ICAC found (1) that Andrew Kelly and CHARIF engaged in corrupt conduct, (2) that Andrew Kelly acted in conflict with his official duties when dealing with CHARIF in relation to Kazal family properties at the Rocks [a historic district in Sydney with restaurants, bars, accommodations, and attractions], at a time when Andrew Kelly was or anticipated being involved with CHARIF in private business, and (3) that CHARIF sought to improperly influence Andrew Kelly's official functions by holding out the prospect of Andrew Kelly being involved with the Kazal family in a private business in the UAE.   The ICAC also found that CHARIF had committed perjury. The ICAC concluded that:

> Charif Kazal acted corruptly by holding out the prospect of employment in the UAE to Mr Kelly and paying him $11,170 for his flight and accommodation expenses arising from a trip to the UAE in May 2007, with the intention that these would tend to influence Mr Kelly to exercise his official SHFA functions in a manner favourable to Kazal business interests.

27.     CHARIF also has admitted to forgery of corporate documents in sworn testimony before the ICAC and in a case he commenced against MR. DAVID in the Grand Court of the Cayman Islands. CHARIF is currently under criminal investigation by the Cayman Islands Police for that admission.

28.     Not only have the KAZAL BROTHERS published these defamatory statements on the WEBSITE, they also have paid for advertising on the Internet to direct viewers *to* the WEBSITE and the defamatory statements about MR. DAVID.  PLAINTIFF is informed and believes, and thereon alleges, that the KAZAL BROTHERS paid for Google AdWords, which is a form of search engine marketing (*i.e.*, paid advertising that appears next to or above unpaid search results) to drive viewers to the WEBSITE.  Google AdWords allows geo-targeting so that the ads appear in a particular area, such as region, country, or specific distance from the target person or business.

29.     As of October 2013, a person in California performing a Google search for "RODRIC DAVID" would be directed to a paid Google ad entitled "Kazal Family Story – Read about Charif and Tony Kazal," with a link to www.kazalfamilystory.com and its defamatory statements about MR. DAVID.  A true and correct copy of a computer screen shot showing the KAZAL BROTHERS' Google ad appearing in first position, taken in California on October 7, 2013, is attached hereto at **Exhibit "A"** and is incorporated herein by reference.

30.     In addition to posting defamatory statements on the WEBSITE in order to destroy MR. DAVID's reputation and business, the KAZAL BROTHERS' threatening behavior compelled MR. DAVID and his family to relocate from Sydney to California.  The KAZAL BROTHERS, among other things, hired a private detective to follow MR. DAVID's wife and to show up outside the school of MR. DAVID's young children.  Members of the Kazal family followed and harassed MR. DAVID in Sydney's central business district, which was captured on surveillance video and is the subject of a New South Wales Police Report.  Now the KAZAL BROTHERS have posted on the WEBSITE that MR. DAVID lives in California, and they continue to harass him in that State.

31.     Members of the Kazal family have also subjected MR. DAVID's father, uncle, brothers, and sisters-in-law to similar harassment.  Those relatives are now protected by an Apprehended Violence Order that was initiated by the New South Wales Police and granted by the New South Wales Supreme Court.

32.     In addition, many statements published on the WEBSITE constitute a breach of the non-disclosure provisions attached to the Interim Report and Final Forensic Report prepared by Ernst & Young ("E&Y") in the Emergent Capital Limited voluntary liquidation proceedings in the Grand Court of Cayman Islands.   The terms of the August 31, 2010 Court Order and E&Y engagement letter signed by CHARIF and MR. DAVID expressly state that the Interim Report and Final Forensic Report are <u>strictly confidential</u> and compiled solely in connection with the investigation in the Court proceedings and the liquidation of ECL in Cayman Islands.   The engagement letter state in relevant part:

> Paragraph 11 "Any information, advice, recommendation or other content of any reports, presentations or other communications we provide under this agreement ("Reports") other than Client information, are for internal use only".

> Paragraph 12 "You may not disclose a Report (or any portion or summary of a Report), or refer to us or to any other E&Y Firm in connection with the services, except to your lawyers, as required by legal process etc." If you are permitted to disclose the Report (or portion thereof), you shall not alter, edit, or modify it from the form we provide."

33.     Further, Section 5.4 of the report states "this report has been prepared to be used in the matter of Section 11 of the Companies Law 92010 revision) and the matter of Emergent Capital Limited (in Official Liquidation), in the Grand Court of the Cayman Islands, Financial Services Division Cause No.: FSD 29, 0f 2011 (AJJ). This report may not be used or distributed for any other purpose without our written consent."

34.     In violation of the Court Order, the E&Y engagement, and the Reports, Chapters 21, 22, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35 of the WEBSITE makes reference to, and

includes statements relating to the contents of the E&Y Reports. The statements in these chapters not only violated the above-cited non-disclosure provisions, but were selectively published, modified, or otherwise misrepresented to distort the actual findings in the Reports and the outcome of the ECL liquidation proceedings.

35.    By letter dated October 1, 2013 to Defendants' attorneys, PLAINTIFF's attorney demanded that the KAZAL BROTHERS, and each of them, cease and desist from defaming MR. DAVID; to delete all posts on the WEBSITE that reference or refer to MR. DAVID; to publicly post a retraction to the WEBSITE and acknowledging that the KAZAL BROTHERS have made false statements about MR. DAVID's business practices and character; and to confirm in writing their acceptance of these requests. A true and correct copy of PLAINTIFF's October 1, 2013 letter is attached hereto as **Exhibit "B"** and is incorporated herein by reference.

36.    The KAZAL BROTHERS responded by rejecting PLAINTIFF's demands, and denied that any of the statements were false.

37.    By letter dated December 2, 2013 to Defendants' attorneys, PLAINTIFF's attorney against demanded that the KAZAL BROTHERS, and each of them, cease and desist from defaming MR. DAVID; to delete all posts on the WEBSITE that reference or refer to MR. DAVID, to publicly post a retraction to the WEBSITE and acknowledging that the KAZAL BROTHERS have made false statements about MR. DAVID's business practices and character; and to confirm in writing their acceptance of these requests. A true and correct copy of PLAINTIFF's December 2, 2013 letter is attached hereto as **Exhibit "C"** and is incorporated herein by reference.

38.    As of the date of filing of this Complaint, the KAZAL BROTHERS have refused and failed to respond.

39.    As a result of the acts and omissions of the KAZAL BROTHERS, and each of them as aforesaid, PLAINTIFF suffered the injuries and damages as hereinafter described.

**FIRST CAUSE OF ACTION**

**(Defamation)**

40.   PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 39, inclusive, as if fully set forth in this cause of action.

41.   The KAZAL BROTHERS published on the WEBSITE false statements of fact that unequivocally claim PLAINTIFF has committed and does commit crime, and has engaged in and does engage in wrongdoing with respect to his business ventures.

42.   PLAINTIFF is informed and believes and thereon alleges that the KAZAL BROTHERS, and each of them, have made other statements reflecting poorly on PLAINTIFF's personal character and actions in respect to his business, and that all such statements by the KAZAL BROTHERS as enumerated herein and otherwise were communicated to third persons in California and elsewhere who understood the statements and the implications therein.

43.   PLAINTIFF is informed and believes, and thereon alleges, that the statements posted by the KAZAL BROTHERS on the WEBSITE were false, and tend to injure PLAINTIFF in his profession by imputing to PLAINTIFF dishonesty and lack of good character and general disqualification in respect to his profession and business.

44.   PLAINTIFF is informed and believes, and thereon alleges, that the statements published by the KAZAL BROTHERS on the WEBSITE were false and posted with knowledge of falsity or with reckless disregard for the truth; that the statements were not privileged because they were stated with malice and/or if published to a person interested therein, were beyond the scope of and abusive of any qualified privilege.

45.   As a result of the defamation of PLAINTIFF by the KAZAL BROTHERS, PLAINTIFF suffered damage to his reputation, and damages and injuries in an as yet uncertain amount that will be established according to proof at trial.

46.   The aforementioned acts of the KAZAL BROTHERS were willful and malicious in that the KAZAL BROTHERS engaged in said conduct with the intent to cause PLAINTIFF harm and with a conscious disregard for PLAINTIFF's rights.  PLAINTIFF is therefore entitled to punitive damages.

47.     As a direct and proximate result of the acts of the KAZAL BROTHERS alleged above, PLAINTIFF has already suffered irreparable damage. PLAINTIFF has no remedy at law and will suffer irreparable injury unless the KAZAL BROTHERS are restrained and enjoined to remove all of the content from the WEBSITE and from further acts of defamation.

## SECOND CAUSE OF ACTION

### (Slander Per Se)

48.     PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 47, inclusive, as if fully set forth in this cause of action.

49.     The words and actions of the KAZAL BROTHERS, and each of them, as aforesaid, were slanderous per se because they conveyed unambiguously to all persons who heard them that PLAINTIFF had committed some crime or engaged in wrongdoing with respect to his business, and because they tended to injure PLAINTIFF in his profession and business by imputing to him dishonesty and lack of good character and general disqualification in respect to his profession and business.

50.     As a result of the defamation of by the KAZAL BROTHERS, PLAINTIFF suffered damage to his reputation, and damages and injuries in an as yet uncertain amount that will be established according to proof at trial.

51.     The aforementioned acts of the KAZAL BROTHERS were willful and malicious in that the KAZAL BROTHERS engaged in said conduct with the intent to cause PLAINTIFF harm and with a conscious disregard for PLAINTIFF's rights.  PLAINTIFF is therefore entitled to punitive damages.

52.     As a direct and proximate result of the acts of the KAZAL BROTHERS alleged above, PLAINTIFF has already suffered irreparable damage. PLAINTIFF has no remedy at law and will suffer irreparable injury unless the KAZAL BROTHERS are restrained and enjoined to remove all of the content from the WEBSITE and from further acts of defamation.

## THIRD CAUSE OF ACTION

### (Intentional Interference with Economic Advantage)

53.    PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 52, inclusive, as if fully set forth in this cause of action.

54.    At times relevant hereto, the KAZAL BROTHERS, and each of them, knew of the business relationship between PLAINTIFF and his customers, both existing and prospective, and intentionally engaged in conduct which interfered with the business relationship between PLAINTIFF and his customers and potential customers.

55.    As a result of the KAZAL BROTHERS' acts as aforesaid, PLAINTIFF suffered damages and injuries in an as yet uncertain amount that will be established according to proof at trial.

56.    The aforementioned acts of the KAZAL BROTHERS were willful and malicious in that the KAZAL BROTHERS engaged in said conduct with the intent to cause PLAINTIFF harm and with a conscious disregard for PLAINTIFF's rights.  PLAINTIFF is therefore entitled to punitive damages.

57.    As a direct and proximate result of the acts of the KAZAL BROTHERS alleged above, PLAINTIFF has already suffered irreparable damage. PLAINTIFF has no remedy at law and will suffer irreparable injury unless the KAZAL BROTHERS are restrained and enjoined to remove all of the content from the WEBSITE and from further acts of defamation.

## FOURTH CAUSE OF ACTION

### (Negligent Interference with Economic Advantage)

58.    PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 57, inclusive, as if fully set forth in this cause of action.

59.    At times relevant hereto, the KAZAL BROTHERS, and each of them, negligently, carelessly, recklessly, and unlawfully engaged in conduct which interfered with the business relationship between PLAINTIFF and his customers, both existing and prospective, and which the KAZAL BROTHERS knew or should have known would cause said interference.

60.     As a direct and proximate result of the KAZAL BROTHERS' acts as aforesaid, PLAINTIFF suffered damages and injuries in an as yet uncertain amount that will be established according to proof at trial.

## FIFTH CAUSE OF ACTION

### (Negligence)

61.     PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 60, inclusive, as if fully set forth in this cause of action.

62.     PLAINTIFF is informed and believes, and thereon alleges, that at all times relevant, the KAZAL BROTHERS, and each of them, negligently, carelessly, recklessly, and unlawfully represented, published, stated, acted, failed to act, entrusted, hired, employed, supervised, directed, managed, oversaw and controlled, themselves and each other in disregard of the rights and safety of others in that the KAZAL BROTHERS failed to exercise reasonable care in doing or failing to do any and all facts as herein alleged.

63.     As a result of such negligence, carelessness and recklessness of the KAZAL BROTHERS and each of them, PLAINTIFF suffered damages and injuries in an as yet uncertain amount that will be established according to proof at trial.

## SIXTH CAUSE OF ACTION

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

64.     PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 63, inclusive, as if fully set forth in this cause of action.

65.     The above conduct by the KAZAL BROTHERS was extreme, outrageous, intentional and malicious, and done for the purpose of causing PLAINTIFF to suffer mental anguish and emotional distress.

66.     As a direct and proximate result of the above acts by the KAZAL BROTHERS, PLAINTIFF has suffered humiliation, mental anguish and emotional distress, and has been injured in that he has been forced to relocate from Sydney to California and has been deprived of the company of his extended family; faced physical and emotional harassment at the hands of the

KAZAL BROTHERS; and has been damaged professionally in his relations with both current and prospective business partners.   The extent of PLAINTIFF's damages and injuries are as yet uncertain, the amount of which will be established according to proof at trial.

67.     The above acts by the KAZAL BROTHERS were willful, wanton, malicious and oppressive and, as such, justify the awarding of exemplary and punitive damages.

## SEVENTH CAUSE OF ACTION

### (Violation of Right to Privacy – Public Disclosure of Private Facts)

68.     PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 67, inclusive, as if fully set forth in this cause of action.

69.     By publishing the confidential E&Y Reports in violation of the Court Order, the E&Y engagement, and the Reports, the KAZAL BROTHERS have publicized private information concerning PLAINTIFF, the publicity from which a reasonable person in PLAINTIFF's position would consider highly offensive.

70.     PLAINTIFF is informed and believes, and thereon alleges, that at all times relevant, the KAZAL BROTHERS, and each of them, knew, or acted with reckless disregard of the fact, that a reasonable person in PLAINTIFF's position would consider the publicity highly offensive, and that the private information was not of legitimate public concern or had no substantial connection to a matter of legitimate public concern.

71.     As a direct and proximate result of the KAZAL BROTHERS' acts as aforesaid, PLAINTIFF suffered damages and injuries in an as yet uncertain amount that will be established according to proof at trial.

## EIGHTH CAUSE OF ACTION

### (Violation of Right to Privacy – False Light)

72.     PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 71, inclusive, as if fully set forth in this cause of action.

73.     By publishing on the WEBSITE false statements of fact that PLAINTIFF has committed and does commit crime, has engaged and does engage in wrongdoing with respect to

his business ventures, is dishonest and lacks good character; and by publishing photos of PLAINTIFF that were unauthorized and, in one instance, doctored to show PLAINTIFF dressed in black with a large sack over his shoulder like a thief, the KAZAL BROTHERS have showed PLAINTIFF in a false light.

74.     The false light created by the KAZAL BROTHERS' publication would be highly offensive to a reasonable person in PLAINTIFF's position.

75.     PLAINTIFF is informed and believes, and thereon alleges, that at all times relevant, the KAZAL BROTHERS knew the publication would create a false impression about PLAINTIFF, acted with reckless disregard for the truth, or were negligent in determining the truth of the information or whether a false impression would be created by its publication;

76.     As a direct and proximate result of the KAZAL BROTHERS' acts as aforesaid, PLAINTIFF suffered damages and injuries in an as yet uncertain amount that will be established according to proof at trial.

### NINTH CAUSE OF ACTION

### (INJUNCTIVE RELIEF)

77.     PLAINTIFF re-alleges and incorporates by reference each and every allegation of paragraphs 1 through 76, inclusive, as if fully set forth in this cause of action.

78.     The KAZAL BROTHERS continue to engage in the wrongful conduct described in this Complaint, in derogation of PLAINTIFF's rights, and the KAZAL BROTHERS will continue to do so unless restrained and enjoined from doing so by this Court. Such conduct, if permitted, will cause irreparable injury to PLAINTIFF for which monetary damages would not provide an adequate remedy, in that the KAZAL BROTHERS' wrongdoing harms PLAINTIFF's reputation and threatens PLAINTIFF's current and potential business relationships, the loss of which would be difficult to value, and thus difficult to ascertain the amount of compensation which would afford PLAINTIFF adequate relief. PLAINTIFF is entitled to preliminary and permanent injunctions, (a) restraining and enjoining the KAZAL BROTHERS, and any and all persons or firms acting in concert with the KAZAL BROTHERS, and each of them, from hosting, posting,

and publishing any comments about PLAINTIFF and/or any member of his family on the WEBSITE or any other forum or media; and (b) ordering the KAZAL BROTHERS, and any and all persons or firms acting in concert with the KAZAL BROTHERS, and each of them, to delete all posts from the WEBSITE that reference or refer to PLAINTIFF and/or any member of his family; to remove all images of PLAINTIFF from the WEBSITE; and to post a retraction on the WEBSITE acknowledging the falsity of all statements about PLAINTIFF and/or any member of his family.

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment as set forth below:

A.    On the FIRST CAUSE OF ACTION,

     (i)    For judgment against all Defendants equal to Plaintiffs' damages as determined at trial;

     (ii)   For punitive damages in such amount as the Court or jury may award;

     (iii)  For an injunction restraining and enjoining Defendants to remove all of the content from the WEBSITE and from further acts of defamation.

B.    On the SECOND CAUSE OF ACTION,

     (i)    For judgment against all Defendants equal to PLAINTIFF's damages as determined at trial;

     (ii)   For punitive damages in such amount as the Court or jury may award; and

     (iii)  For an injunction restraining and enjoining Defendants to remove all of the content from the WEBSITE and from further acts of defamation.

C.    On the THIRD CAUSE OF ACTION,

     (i)    For judgment against all Defendants equal to PLAINTIFF's damages as determined at trial;

     (ii)   For punitive damages in such amount as the Court or jury may award;

     (iii)  For an injunction restraining and enjoining Defendants to remove all of the content from the WEBSITE and from further acts of defamation.

D.   On the FOURTH CAUSE OF ACTION, for judgment against all Defendants equal to PLAINTIFF's damages as determined at trial.

E.   On the FIFTH CAUSE OF ACTION, for judgment against all Defendants equal to PLAINTIFF's damages as determined at trial.

F.   On the SIXTH CAUSE OF ACTION,

   (i)   For judgment against all Defendants equal to PLAINTIFF's damages as determined at trial; and

   (ii)   For punitive damages in such amount as the Court or jury may award.

G.   On the SEVENTH CAUSE OF ACTION, judgment against all Defendants equal to PLAINTIFF'S damages as determined at trial.

H.   On the EIGHTH CAUSE OF ACTION, judgment against all Defendants equal to PLAINTIFF's damages as determined at trial.

I.   On the NINTH CAUSE OF ACTION,

   (i)   For an order requiring Defendants to show cause, if any, why they should not be enjoined as set forth herein, during the pendency of this action;

   (ii)   For injunctive relief, temporary and permanent, enjoining Defendants, and any and all persons or firms acting in concert with Defendants (a) from hosting, posting, and/or publishing any comments about PLAINTIFF and/or any member of his family on the WEBSITE or any other forum or media; and (b) to delete all posts from the WEBSITE that reference or refer to PLAINTIFF and/or any member of his family; to remove all images of PLAINTIFF from the WEBSITE; and to post a retraction on the WEBSITE acknowledging the falsity of all statements about PLAINTIFF and/or any member of his family.

J.   On ALL CAUSES OF ACTION,

   (i)   For interest on all damages at the legal rate according to proof;

   (ii)   For the costs of suit incurred herein;

(iii)     For reasonable attorneys' fees; and

(iv)     For such other and further relief that the Court may deem just and proper.

DATED: December 23, 2013                         NAMI LAW FIRM

By_____
                                                            Nima Nami

Attorneys for Plaintiff RODRIC DAVID

COMPLAINT FOR DAMAGES AND OTHER RELIEF          21
Case No.